STATE OF NORTH CAROLINA v. JAMES CHARLES BOONE

No. 29PA83

(Filed 2 February 1984)

1. Judgments § 2.1; Searches and Seizures § 43— denial of motion to suppress evidence—order entered after session and in another district

An order denying defendant's pretrial motion to suppress seized evidence was a nullity where it was signed after the close of the session at which the motion was heard, was signed outside the county and district in which defendant was being tried, and was entered out of session. Therefore, when the defendant renewed his motion to suppress, it was encumbent upon the new judge to consider the motion anew and conduct a hearing thereon pursuant to G.S. 15A-977. Although no cases have construed G.S. 15A-101(4)(a), which governs "entry of judgment" in criminal cases, it is the better practice for the judge to announce his ruling in open court and direct the clerk to note the ruling in the minutes of the court rather than for a judge to mail his ruling to the clerk, and then allow the clerk to notify the respective parties of the judge's decision.

2. Narcotics § 4.6— instructions as to knowledge of possession

In a prosecution for the felonious manufacturing of a controlled substance (marijuana) and the felonious possession of more than one ounce of marijuana, the trial court erred in instructing the jury that defendant could be found guilty of possessing marijuana if he had reason to know that what he possessed was marijuana since under the circumstances of the case, the court should have instructed the jury that the defendant is guilty only in the event he knew the marijuana was in the trunk of his automobile and that if he was ignorant of that fact, and the jury should so find, they should return a verdict of not guilty. The instruction cited by the trial court was consistent with the North Carolina Pattern Jury Instructions; however, there was no basis for this instruction and this instruction should not be used in charging the jury in criminal cases regarding possession of a controlled substance.

ON discretionary review of the decision of the Court of Appeals, reported at 59 N.C. App. 730, 297 S.E. 2d 920 (1982), granting defendant a new trial because of the trial court's error in refusing to conduct a hearing on defendant's renewed motion to suppress evidence before trial. Judgment was entered at the 2 July 1981 Session of Superior Court, ONSLOW County, the *Honorable James R. Strickland, Judge* Presiding. Heard in the Supreme Court 14 September 1983.

Defendant was charged in bills of indictment, proper in form, with the felonious manufacturing of a controlled substance (marijuana) and the felonious possession of more than one ounce of

marijuana, both violations of the Controlled Substances Act, G.S. § 90-86 *et seq.* Defendant entered pleas of not guilty to both charges. A jury found defendant guilty of felonious possession of more than one ounce of marijuana in violation of G.S. § 90-95. The trial court sentenced defendant to imprisonment for a maximum term of twenty-four months and a minimum term of eighteen months. The Court of Appeals granted defendant a new trial. This Court allowed the State's petition for discretionary review on 8 March 1983.

*Rufus L. Edmisten, Attorney General, by Dennis P. Myers, Assistant Attorney General, for the State-appellant.*

*Jeffrey S. Miller, for the defendant-appellee.*

FRYE, Justice.

The State seeks to have the Court of Appeals' decision granting defendant a new trial reversed because it "appears likely to be in conflict with one or more prior decisions" of this Court and the Court of Appeals. For the reasons stated in this opinion, we find that the Court of Appeals correctly applied the law of this State, and therefore, we affirm the decision of the Court of Appeals.

The State's evidence tended to show the following: On 13 February 1981, a number of police officers, acting pursuant to a valid search warrant, were searching a place known as the Old Langley Farm near Jacksonville, in Onslow County. The search led to the seizure of a substantial amount of marijuana and other items. As SBI Agent A. R. Stevens was leaving the scene of the search with a truck load of confiscated goods, he noticed a vehicle driven by the defendant approaching the farm. Defendant stopped the vehicle and began to back up at a high rate of speed along the dirt road leading to the farm.

Agent Stevens pursued the vehicle and motioned for the defendant to pull over. Defendant pulled over and he and the other passengers of the car were asked to return to the farm. Defendant and the other passengers of the car, one of whom was Tommy Johnson, a reputed drug dealer, returned to the farm, although they were not placed under arrest.

After returning to the farm, defendant was asked by Deputy Sheriff Gibson, if he (Gibson) could examine the trunk of defendant's car. After defendant opened the trunk, Gibson observed some clear plastic containers, with greenish-brown vegetable matter in them, sticking out of the edge of a duffel bag in the trunk. The duffel bag was seized, and the defendant was placed under arrest. It was later determined that the duffel bag contained approximately ten pounds of marijuana.

Defendant's pre-trial motion to suppress the marijuana discovered in his car was heard by Judge Elbert S. Peel, Jr., on 16 and 18 June 1981 at a Criminal Session of Superior Court, Onslow County, which is located in the Fourth Judicial District. During the afternoon of 18 June, Judge Peel allowed counsel for both parties to present "case law" to him in chambers. It is unclear whether Judge Peel made a formal ruling denying defendant's motion to suppress in chambers. Judge Peel, through an affidavit, states that his recollection is that counsel for the defendant was informed of his ruling in chambers but he could not swear to it. In any event, Judge Peel readily admits that his ruling was not made in open court. Defendant's counsel states that he was not informed of the judge's ruling until sometime after the "in chambers" discussion. Judge Peel signed the Order denying defendant's motion to suppress evidence on 25 June 1981 in Williamston, North Carolina, Martin County, which is located in the Second Judicial District. The original of the Order was mailed to the clerk of court, Onslow County, on that same day and copies were also mailed to counsel for the State and the defendant. The Order was received by the clerk on 27 June 1981.

At trial, before Judge Strickland, defendant renewed his motion to suppress, contending that Judge Peel's Order denying his motion to suppress was invalid. Judge Strickland denied defendant's motion to suppress without conducting a suppression hearing.

I.

[1] Defendant contends and the Court of Appeals agreed that Judge Strickland committed reversible error by failing to conduct a new suppression hearing because Judge Peel's Order denying defendant's motion to suppress was a nullity since it "was signed after the session at which the motion was heard was closed and it

was signed outside of the district and outside of the county in which defendant was being tried." *State v. Boone*, 59 N.C. App. 730, 732, 297 S.E. 2d 920, 921 (1982). We agree with the decision of the Court of Appeals.

The general rule concerning judgments and orders is as follows:

> [J]udgments and orders substantially affecting the rights of parties to a cause pending in the Superior Court at a term must be made in the county and at the term when and where the question is presented, and our decisions on the subject are to the effect that, except by agreement of the parties or by reason of some express provision of law, they cannot be entered otherwise, and assuredly not in another district and without notice to the parties interested.

*State v. Humphrey*, 186 N.C. 533, 535, 120 S.E. 85, 87 (1923). In prior and subsequent cases, this rule has been stated in various forms, and it has been consistently applied in both criminal and civil cases. *See State v. Saults*, 299 N.C. 319, 261 S.E. 2d 839 (1980); *Baker v. Varser*, 239 N.C. 180, 79 S.E. 2d 757 (1954); *State v. Alphin*, 81 N.C. 566 (1879). We still adhere to this rule today.

In *Alphin*, this Court stated that the judge had no power to make an order granting a new trial after the expiration of the term and that such an order was a nullity and should be stricken from the record. *Alphin*, 81 N.C. at 567-68. Additionally, in *Saults*, this Court held that an order denying a new trial was void where the parties did not consent to the entry of an order out of term, out of session, out of county, and out of the district where the hearing was being held. *Saults*, 299 N.C. at 325, 261 S.E. 2d at 842-43. Read together, *Alphin* and *Saults* stand for the proposition that an order of the superior court, in a criminal case, must be entered during the term, during the session, in the county and in the judicial district where the hearing was held.

Applying the aforementioned general rule and the holdings of this Court in criminal cases pertaining to the entry of orders in the superior court to the instant case, it is clear that the Order entered by Judge Peel was null and void and of no legal effect.

Pursuant to our power to take judicial notice of the assignment of trial judges to hold court, *Baker v. Varser*, 239 N.C. 180,

79 S.E. 2d 757 (1954), we take judicial notice of the following: During the Spring Session 1981 (January 5 to June 29) Judge Peel was assigned to the Fourth Judicial District and he was assigned to hold the 15 June 1981 Criminal Session of Superior Court, Onslow County. This criminal session was scheduled to last one week unless all of the court's business was not disposed of at that time, in which case Judge Peel was statutorily authorized to continue the session until all of the court's business had been completed. *See* G.S. § 15-167. This criminal session of court was adjourned by Judge Peel on 18 June 1981.

In light of the fact that Judge Peel signed the Order denying defendant's motion to suppress on 25 June 1981, in Williamston, North Carolina, Martin County, which is located in the Second Judicial District, it is quite clear that Judge Peel's Order was signed out of session, out of county, and out of district and, therefore, was null and void and of no legal effect. Thus, when the defendant renewed his motion to suppress, it was incumbent upon Judge Strickland to consider the motion anew and conduct a hearing thereon pursuant to G.S. § 15A-977. His failure to do so constitutes error.

The result reached in this case is not affected by the two arguments advanced by the State to uphold the validity of Judge Peel's Order. First, the State argues that defendant did not object to the procedures employed in the instant case at any time, although he had plenty of opportunities to do so. Suffice it to say that defendant did object to the validity of the Order entered by Judge Peel immediately prior to his trial on the felony charges. We also note that in *Saults*, this Court considered *ex mero motu* the question of the trial court's authority to enter an order out of session although the defendant did not raise any question about it on appeal. *Saults*, 299 N.C. at 324-25, 261 S.E. 2d at 842-43. Jurisdictional questions which relate to the power and authority of the court to act in a given situation may be raised at any time. *See Askew v. Tire Co.*, 264 N.C. 168, 141 S.E. 2d 280 (1965).

Secondly, the State argues that "the case law does not support the proposition that the signing of an order out of term and out of district renders such order a nullity without regard to whether the [d]efendant is prejudiced thereby," citing *State v. Richardson*, 295 N.C. 309, 245 S.E. 2d 754 (1978) and *State v.*

*Williams*, 34 N.C. App. 386, 238 S.E. 2d 195 (1977). In both of those cases it appears that the trial judge announced his ruling on the motion to suppress during the session when it could be entered in the court's records by the clerk, although the findings of fact and conclusions of law supporting the decision were made and the orders signed at a later time. Thus the parties were immediately aware of the judge's decision although the formal findings supporting that decision were subsequently entered. Thus the court, in each case, considered whether this delay in dictating the findings of fact and conclusions of law was prejudicial. *Richardson*, 295 N.C. at 319-20, 245 S.E. 2d at 761-62; *Williams*, 34 N.C. App. at 388, 238 S.E. 2d at 196. In the instant case, there is nothing in the record to support a finding that Judge Peel announced his ruling on the motion to suppress at any time during the session or that any record of a decision was made until after the session had ended. Thus the critical decision, the ruling of the court — contained in the Order denying the motion to suppress — was not made, in the instant case, until after the session had ended. That Order being null and void and of no legal effect, *Saults*, 299 N.C. at 325, 261 S.E. 2d at 842-43; *Alphin*, 81 N.C. at 567-68, the question of prejudice to the defendant is never reached.

We also note that the Order in the instant case was *entered* out of session. G.S. § 15A-101, Definitions,[1] provides in pertinent part as follows:

> (4a) Entry of Judgment.—Judgment is entered when sentence is pronounced. Prayer for judgment continued upon payment of costs, without more, does not constitute entry of judgment.

Judge Peel did not announce his ruling on the motion to suppress in open court. Instead, he signed an order denying the motion and mailed it to the clerk and counsel for the State and the defendant. Therefore, at the very earliest, Judge Peel's Order was not entered until 27 June 1981, when the clerk received the Order and apparently filed it and mailed notice of its filing to counsel for both parties. However, as noted above, the session had been adjourned by Judge Peel on 18 June 1981. Accordingly, it is abun-

---

1. Although G.S. § 15A-101(4a) does not specifically apply to orders, we believe that the same rule should apply to judgments and orders.

dantly clear that Judge Peel's Order, in addition to being *signed* out of session, out of county, and out of district, was also *entered* out of session. For all of the foregoing reasons, we have concluded that Judge Peel's Order was null and void.

Our research has not revealed any cases which have construed G.S. § 15A-101(4a), which governs "entry of judgment" in criminal cases. However, we find Rule 58 of the North Carolina Rules of Civil Procedure sufficiently analogous to provide guidance in this area. In pertinent part, Rule 58 provides as follows:

. . . .

In other cases where judgment is rendered in open court, the clerk shall make a notation in his minutes as the judge may direct and such notation shall constitute the entry of judgment for the purposes of these rules. The judge shall approve the form of the judgment and direct its prompt preparation and filing.

In cases where judgment is not rendered in open court, entry of judgment for the purposes of these rules shall be deemed complete when an order for the entry of judgment is received by the clerk from the judge, the judgment is filed and the clerk mails notice of its filing to all parties. The clerk's notation on the judgment of the time of mailing shall be prima facie evidence of mailing and the time thereof.

Although we realize that there are situations where it would be more convenient for a judge to mail his ruling to the clerk, and then allow the clerk to notify the respective parties of the judge's decision, we are convinced that the better practice, in criminal cases, is for the judge to announce his rulings in open court and direct the clerk to note the ruling in the minutes of the court. When the judge's ruling is not announced in open court, the order or judgment containing the ruling must be signed and filed with the clerk in the county, in the district and during the session when and where the question is presented. These rules serve to protect the interests of the defendant, the State, and the public, by allowing all interested persons to be informed as to when a judgment or order has been rendered in a particular matter. Since many rights relating to the appeals process are "keyed" to

the time of "entry of judgment," it is imperative that the judge's decisions become part of the court's records and that all interested persons know the exact date on which judgment is entered. This purpose is served by this Court's holding today.

## II.

[2]  The defendant next assigns as error the following portion of the judge's charge:[2]

> Now, Ladies and Gentlemen of the Jury, I charge that for you to find the defendant guilty of possessing marijuana, a controlled substance with the intent to sell and/or deliver it, the State must prove two things beyond a reasonable doubt. First, that the defendant knowingly possessed marijuana. *And the defendant, and in that connection, the defendant knew or had reason to know that what he possessed was marijuana and marijuana is a controlled substance.* (Emphasis added.)

The State notes, quite correctly, that this instruction is taken from the North Carolina Pattern Jury Instructions. As the defendant notes, this portion of the pattern jury instruction is allegedly based on the Court of Appeals' decision in *State v. Stacy*, 19 N.C. App. 35, 197 S.E. 2d 881 (1973). However, in that case, the Court of Appeals rejected a similar request for instruction to the jury and held that under the evidence in that case: "the court should have instructed the jury that the defendant is guilty only in the event he knew the package contained heroin and that if he was ignorant of that fact, and the jury should so find, they should return a verdict of not guilty." *Id.* at 38, 197 S.E. 2d at 882-83. We agree with defendant, therefore, that *Stacy* does not support the purported instruction contained in the North Carolina Pattern Jury Instructions—Criminal 260.10, footnote 1 (May 1980 Replacement), that if the defendant had reason to know that what he possessed was a controlled substance, the jury should find him guilty of knowing possession.

In *State v. Elliott*, 232 N.C. 377, 61 S.E. 2d 93 (1950), the defendant was convicted of unlawful possession and transporta-

---

2. Although this assignment of error was not addressed by the Court of Appeals, we consider it appropriate to address it here since the same question may arise again on retrial of this case.

tion of illicit intoxicating liquor. The State's evidence disclosed that the Sheriff found a five-gallon jug containing nontax-paid liquor partially concealed in a grass bag in the back seat of defendant's car. One Riddick was in the back seat and defendant and his brother were in the front seat, defendant's brother being on the driver's side. The defendant testified that he and his brother had picked up Riddick who was walking along the road with a bag on his back but denied any knowledge that the bag contained intoxicating liquor. Justice Barnhill, writing for a unanimous Court, stated the applicable law as follows:

> A person is presumed to intend the natural consequences of his act. *S. v. Phifer*, 90 N.C. 721; *S. v. Barbee*, 92 N.C. 820; *S. v. Davis*, 214 N.C. 787, 1 S.E. 2d 104; *Warren v. Insurance Co.*, 217 N.C. 705, 9 S.E. 2d 479. Hence, ordinarily, where a specific intent is not an element of the crime, proof of the commission of the unlawful act is sufficient to support a verdict. *S. v. Davis, supra*. It follows that the State made out a *prima facie* case when it offered testimony tending to show that there was a jug containing four gallons of liquor on the automobile then in the possession of and being operated by defendants.

> Nothing else appearing, it would not be necessary for the court, in the absence of a prayer, to make reference in its charge to guilty knowledge or intent. *Scienter* is presumed. "The presumption, however, is not conclusive; it is evidence only so far as to prove a *prima facie* case in respect to the intent." *S. v. Barbee, supra*.

> Here the appellant specifically pleads want of knowledge of the presence of liquor on the automobile and offered evidence in support of that plea. He thereby raised a determinative issue of fact. Indeed, it was the only controverted issue in the trial. Thus, under the circumstances of this case, guilty knowledge on the part of the appellant is an essential element of the crimes charged, and the law in respect thereto becomes a part of the law of the case which should be explained and applied by the court to the evidence in the cause. *S. v. Welch, ante*, 77.

. . . .

State v. Boone

The appellant admits that he owned the automobile which was being operated by his brother with his consent and in his presence, and that the sheriff found the liquor on his car. Thereby, he admits in effect that he was transporting liquor, though he says he was not aware of the fact at the time. Thus the instruction of the court on the law overlooks the contention of the defendant and the evidence in support thereof and cuts the ground from under him on his defense. *Non constat* he was transporting liquor, he is not guilty of the offense charged unless he had knowledge the liquor was on his automobile. A general intent to commit the act charged is essential. *S. v. Welch, supra.*

*Under the circumstances of this case the court should have instructed the jury that the defendant is guilty only in the event he knew the liquor was on his automobile and that if he was ignorant of that fact, and the jury should so find, they should return a verdict of not guilty.* (Emphasis added.)

*Elliott,* 232 N.C. at 378-79, 61 S.E. 2d at 95.

In *State v. Neel,* 8 Or. App. 142, 493 P. 2d 740 (1972), the defendant was charged with the possession of marijuana after two bags of marijuana were found in the trunk of the defendant's automobile. The trial court instructed the jury that if the defendant had possession of the marijuana and "had reason to believe" that the bag contained a narcotic drug or dangerous drug, then the defendant could be found guilty as charged. On appeal, the Oregon Court of Appeals reversed and remanded the case to the trial court, holding that the state must establish that the defendant had actual knowledge of the nature of the items he was charged with possessing before the defendant could be convicted of illegal possession. *Id.* at 147, 493 P. 2d at 742. A number of courts in other states have also held that actual knowledge of the presence of the narcotic on the part of a defendant is an essential ingredient of the offense of possession of narcotics. *See, e.g., People v. Gory,* 28 Cal. 2d 450, 170 P. 2d 433 (1946); *Duran v. People,* 145 Colo. 563, 360 P. 2d 132 (1961); *People v. Mack,* 12 Ill. 2d 151, 145 N.E. 2d 609 (1957). *See generally* Annotation, 91 A.L.R. 2d 810 (1963).

In the instant case, defendant admitted that the seized marijuana was found in the trunk of his automobile, but he denied any

knowledge of the fact that the marijuana was there. Defendant testified that he went to the home of Tommy Johnson and helped him change tires on Johnson's car; that a duffel bag was placed in the trunk of his car at the request of Tommy Johnson when there was not enough room in the trunk of Johnson's car for two big tires and the duffel bag; that Johnson did not show defendant what was in the bag; and, that defendant did not own the bag nor did he know what was in it. Thus, defendant has raised a determinative issue of fact—whether he knew that the marijuana was in the trunk of his car. Such being the case, this Court is presented with a situation substantially similar to *Elliott*. Therefore, we apply the same principles enunciated in *Elliott* and hold that the trial court erred in instructing the jury that defendant could be found guilty of possessing marijuana if he had reason to know that what he possessed was marijuana. Under the circumstances of this case, the court should have instructed the jury that the defendant is guilty only in the event he knew the marijuana was in the trunk of his automobile and that if he was ignorant of that fact, and the jury should so find, they should return a verdict of not guilty. *Elliott*, 232 N.C. at 379, 61 S.E. 2d at 95.[3]

Having carefully considered the statutes and case law related thereto, we have concluded that there is no basis for the instruction cited in the North Carolina Pattern Jury Instructions—Criminal 260.10, footnote 1 (May 1980 Replacement), and this instruction should not be used in charging the jury in criminal cases regarding possession of a controlled substance.

This Court's criticism of the Pattern Jury Instruction in question, N.C.P.I.—Crim. 260.10, footnote 1, does not alter the methods of proving knowledge on the part of a defendant. Knowledge is a mental state and may be proved by the conduct and statements of the defendant, by statements made to him by others, by evidence of reputation which it may be inferred had

---

3. It should be noted that this holding refers to the ultimate fact to be found by the jury and should not be confused with the *quantum* or quality of evidence required to prove knowledge. As stated by the Oregon Court of Appeals in *State v. Neel*, 8 Or. App. 142, 493 P. 2d 740 (1972): "We are aware that seldom can direct evidence be produced that the accused had actual knowledge of a given fact. However, knowledge may be inferred from circumstances, and a jury can be so instructed." *Id.* at 149, 493 P. 2d at 743.

come to his attention, and by circumstantial evidence from which an inference of knowledge might reasonably be drawn. *State v. Foster*, 293 N.C. 674, 239 S.E. 2d 449 (1977); *State v. Ham*, 224 N.C. 128, 29 S.E. 2d 449 (1944); *Hill v. Moseley*, 220 N.C. 485, 17 S.E. 2d 676 (1941); *State v. Mincher*, 178 N.C. 698, 100 S.E. 339 (1919); *State v. Glaze*, 24 N.C. App. 60, 210 S.E. 2d 124 (1974); *State v. Hamlet*, 15 N.C. App. 272, 189 S.E. 2d 811 (1972).

For the reasons hereinabove stated, we find no error in the decision of the Court of Appeals reversing the decision of the Superior Court and granting defendant a new trial, and therefore, the decision of the Court of Appeals is affirmed.

Affirmed.