It is alleged in the petition that what is thus said is erroneous; that the appellant in that case did except in such respect in the way and manner following — that is to say, the court on the trial submitted to the jury an issue in these words:
"7. Did the defendant, after adopting the line upon which the road was constructed across plaintiff's land, pay the plaintiff one hundred dollars, and thereby induce plaintiff to let the water out of his millpond for thirty days, in order that the said pond might be crossed, as it was, by a trestle, instead of building cribs in the water?"
By consent of the parties, the jury responded to this issue, "Yes."
In respect to the issue and the response thereto just mentioned, the court below said and held as follows:
"The response to the fourth issue, `Nothing,' and the seventh issue, `Yes,' were entered by consent. Counsel for defendant contended that the finding upon the seventh issue amounted to a finding in law; that the defendant had a license from plaintiff to construct the road as it was built over his land for the consideration paid to plaintiff, (517) one hundred dollars, and excepted to the ruling of the court that it did not amount to a parol grant of right of way."
To this decision, the appellant excepted in these words:
"14. The defendant excepts to the holding of his Honor that the payment of the $100 did not amount to a parol grant of right of way."
The petition further alleges error in the decision of this Court, complained of as follows:
"That upon the hearing of the said action, on appeal, in the Supreme Court, this defendant's counsel urged that the conduct of the plaintiff, in accepting from this defendant one hundred dollars, and, in consideration thereof, drawing off the water of his mill-pond for the purpose of facilitating the construction of the railroad along the new route, which construction was the fraud of which he complained, was such an acquiescence in that fraud as, in a court of equity, would debar him from any relief against it. But this Court refused to consider the point, and said, through his Honor, the Chief Justice, who delivered its opinion: `This point has been strongly urged in the argument, but as no exception of the kind is shown in the record, it cannot now be entertained, whatever may have been its force if taken in apt time. The judgment following the verdict, which affirms the allegations as to the influences brought to bear upon the plaintiff in inducing the making of the deed, will remain undisturbed' — as appears by the record of said action now here. *Page 407 
"Your petitioner humbly suggests to your Honors that in the refusal of this Court to entertain the said point for the reason alleged here was error. That the fact on which the point was based appears upon the face of the record proper, to wit, in the verdict of the jury; and whenever error so appears, it is the practice of the Court to take notice of it, whether it be urged by way of exception or not; that by the Code, sec. 957, it is provided that, `in every case the Court may (518) render such sentence, judgment and decree as, on inspection of the whole record, it shall appear to them ought, in law to be rendered thereon.' And your petitioner shows that in the case of Thornton v. Brady,100 N.C. 38, this Court held that, `as to the essential parts of the record, the Court will ex mero motu, take notice of errors apparent in it, correct it and enter such judgment as in law ought to be rendered. . . . If what it must necessarily see in the record of the action is erroneous, it will correct the error, although it be not assigned.' And in Godwin v.Monds, 101 N.C. 356, the Court say: "It was contended on the argument that the plaintiffs did not except and assign as error that the judge heard the motion and gave judgment in the county of Anson. That is so; but it does not appear upon the face of the record, in some way, as it should do, that the court had authority to give the judgment, and, therefore, the objection might be taken here, in the absence of any formal exception or assignment of error.'
"And your petitioner shows that these cases escaped the notice of its counsel, and they were not cited, nor in any manner brought to the attention of the Court in the argument here.
"And your petitioner further shows that if this honorable Court had entertained and considered the said point, it would have been called upon to decide that the judgment of the court below avoiding the said deed was erroneous; for your petitioner is advised that it is settled in the law of North Carolina that when a party, with full knowledge of all the material facts, freely does what amounts to a recognition of a transaction or conveyance as existing, or acts in a manner inconsistent with its repudiation, there is acquiescence and the transaction or conveyance, although originally impeachable, becomes unimpeachable (519) in equity."
The error assigned in the action which the petitioner asks to have reheard as to the refusal of the court to instruct the jury that the plaintiff had granted to the defendant by parol license the right of way, in the view the court took of the case, became immaterial, *Page 408 
and it was not necessary to decide the question raised in that respect. The court had jurisdiction for the purpose of deciding the question, and incidental questions as to the validity of the deed in question; it did not have jurisdiction as to the matter of damages.
It is not alleged that error was assigned in the case settled on appeal, in that the court refused or neglected to instruct the jury that the plaintiff ratified and waived objection to the deed by accepting one hundred dollars from the defendant, as the jury found he did do, in response to the seventh issue submitted to them. The court was not asked to give any instruction in that respect, nor did it do so, so far as appears.
But the learned counsel of the petitioner contends that it was the duty of this Court, without any assignment of error, to look through the record and render such judgment as ought, in law, to be given; and inasmuch as it appeared by the record that the defendant did, "after adopting the line upon which the road was constructed across the plaintiff's and, pay the plaintiff one hundred dollars, and thereby induce plaintiff to let the water out of his millpond for thirty days, in order that the said pound might be crossed, as it was, by a trestle instead of building cribs in the water," it ought to have held that such payment, notwithstanding the fraud of the defendant in procuring the deed, was a ratification thereof and a waiver of all objection to it, and given judgment accordingly for the defendant. This contention is founded upon a misapprehension of what the record contains, and a failure to notice material matters not embraced by it.
(520) The plaintiff alleged in his complaint that the deed was obtained from him by the fraud of the defendant and its agents. The defendant in its answer simply broadly denied the allegation of fraud — it was not alleged, in terms or by implication therein, that the plaintiff had in any way ratified the deed or waived his right to have it declared void for fraud, nor was any such defense in any way set up on the trial, at any time in the court below, so far as appears. It alleged in its answer, as a separate defense, "that upon the location and construction of the present line of said road across the plaintiff's lands, the plaintiff demanded and received from the defendant the sum of one hundred dollars for the license and privilege of constructing said road on the line as located. And the defendant pleads the same as a defense to this action." The seventh issue recited above was raised by this allegation and the denial thereof. The response to it was entered by consent, for the purpose of raising the question as to the grant of a license to locate the road on the line on which it was constructed. The fact so found is an isolated one, and the finding is, that the money was paid for the purpose specified therein. It may be that such payment of the money *Page 409 
was not intended or understood by either party to be a ratification of the deed, or a waiver of objection to it; indeed, the circumstances and the fair implications from the record strongly suggest the contrary. It may be that the plaintiff, seeing that the defendant had located and was constructing its road, as he and it believed it had the right to do by virtue of its charter, and without reference to the deed, accepted the money for, and only for, that consideration and purpose specified in the finding of the jury. If so, surely it could not reasonably or justly be contended, much less held by the court, to be a waiver of objection to the fraudulent deed, or the right of the plaintiff to damages. Courts of equity, when, in possible cases courts of law cannot, will uphold fair dealings between parties, and enforce equitable rights growing (521) out of them; but they will not, in such cases, prevent a party from asserting his just rights.
It was not alleged or contended in the pleadings in the court below that the plaintiff ratified, or intended to ratify, the fraudulent deed complained of. The acceptance of the money specified for the purpose and under the circumstances specified in the finding of the jury, did not, of itself, necessarily imply a ratification of that deed by the plaintiff, nor does it appear that the plaintiff or the defendant intended that it should be treated as a ratification of it. The judgment complained of was not inconsistent with so much of the record as preceded it, and it was such as the law allowed and required upon such record. This Court was, therefore, warranted in saying that no exception was made in the respect mentioned, and in declaring that there was no error in so much of the judgment as had reference to the deed. The petition must, hence, be dismissed.